**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the matter of<br>Application of Eleanor de Leon,<br>Under 28 U.S.C. § 1782 for Discovery<br>From Northridge Capital, LLC and<br>CohnReznick LLP,<br><br>Petitioner. | Case No. 19-mc-0197 (TSC) (RMM) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Petitioner Eleanor de Leon ("Petitioner" or "Ms. de Leon") filed an *ex parte* petition seeking discovery pursuant to 28 U.S.C. § 1782 from Northridge Capital, LLC ("Northridge") and CohnReznick LLP ("CohnReznick") (collectively, "Respondents") to obtain evidence for use in legal proceedings in the Cayman Islands. *See* Petition ("Pet."), ECF No. 1. On March 4, 2020, Judge Chutkan issued a Memorandum Opinion and Order (the "March 4th Order") granting the petition and issuing document and deposition subpoenas to Respondents. *See* Mem. Op., ECF No. 7; Order, ECF No. 8. Now, WAFR Holdings Ltd. ("WAFR") and Saturn Property Investments, LLC ("Saturn") (collectively, "Proposed Intervenors") seek to intervene for the purpose of moving to vacate the Court's March 4th Order and to quash the subpoenas issued to Respondents. *See* Mot. to Intervene, Quash, and Vacate ("Mot. to Intervene"), ECF No. 14-1.

Upon consideration of the filings[1] and relevant legal authorities, the Court **GRANTS** Proposed Intervenors' Motion to Intervene, **DENIES** their Motion to Vacate, and **DENIES** **WITHOUT PREJUDICE** their Motion to Quash.

---

[1] *See* Pet., ECF No. 1; Mem. Op., ECF No. 7; Order, ECF No. 8; Mot. to Intervene, Mot. to Quash, and Mot. to Vacate Order Granting Eleanor de Leon's Application for Discovery Under 28 U.S.C. § 1782 ("Mot. to Intervene"), ECF No. 14-1; Pet'r's Opp'n to Mot. to Intervene ("Opp'n"), ECF No. 27; Reply to Opp'n to Mot. to Intervene ("Reply"), ECF No. 32.

## BACKGROUND

Petitioner Eleanor de Leon is a U.S. citizen and the widow of the late Sheikh Osama Ismail Abudawood ("Sheikh Osama"), a citizen of Saudi Arabia who died on June 13, 2017.  *See* Pet. ¶ 2.  At the time of his death, Sheikh Osama was one of the owners of a number of Cayman Islands investment partnerships and other entities.  *See id.* ¶¶ 3-7.  As his widow, Ms. de Leon is entitled to 12.5% of his estate.  *See id.* ¶ 2.  While the identities of Sheikh Osama's heirs are undisputed, the distribution of his estate, which includes "interest in many of these companies, as well as personal property located around the world, and bank accounts and corporate interests in the Cayman Islands" has resulted in several lawsuits across numerous jurisdictions.  *See* Mot. to Intervene at 6–7.

On November 12, 2019, Ms. de Leon filed an *ex parte* petition in the U.S. District Court for the District of Columbia requesting the issuance of subpoenas, for both documents and depositions, to Respondents Northridge and CohnReznick.  *See generally* Pet.  The Court granted the petition on March 4, 2020.  *See* Mem. Op; Order.  The subpoenas were served on Respondent Northridge and on Respondent CohnReznick in March 2020.  *See* ECF Nos. 9, 10, 19, 20.  The Northridge subpoenas request documents on 73 separate topics, with some requests stretching back to January 1, 2012—five and a half years prior to Sheikh Osama's death—and identify 31 deposition topics.  *See* ECF Nos. 1-2, 1-3.  Similarly, the CohnReznick subpoenas include 66 document request categories and 30 deposition topics.  *See* ECF Nos. 1-4, 1-5.

Proposed Intervenors WAFR and Saturn filed a joint motion to intervene for the "sole purpose of opposing the Petition and *ex parte* Motion."  Mot. to Intervene at 16 n.3.  WAFR

---

Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is asterisked (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.

Holdings is a Cayman Islands entity and holds several properties that are part of Sheikh Osama's estate. *See* Pet. ¶¶ 3–5; Mot. to Intervene at 10. Saturn is a WAFR subsidiary located in Delaware that owns numerous LLCs with real estate holdings managed by Respondent Northridge. *See* Pet. ¶¶ 3–5; Mot. to Intervene at 10. In turn, Respondent CohnReznick is Northridge's auditor and tax preparer. *See* Pet. ¶¶ 3–5; Mot. to Intervene at 10.

In support of their Motion to Vacate, Proposed Intervenors WAFR and Saturn argue that Ms. de Leon "has not demonstrated that the true targets of her subpoenas are 'found' in this district, nor has she shown that her requests are 'for use' in the Cayman proceedings." Mot. to Intervene at 16. In their Motion to Quash, Proposed Intervenors argue that the subpoenas are unduly intrusive, burdensome, and not proportional. *See id.* at 30. Ms. de Leon filed an Opposition to the Proposed Intervenors' motions, in which she does not oppose their intervention but does oppose the substantive relief they seek. Specifically, Ms. de Leon requests that the Court's order remain undisturbed and argues that Proposed Intervenors lack standing to invoke the burden the subpoenas impose on Northridge and CohnReznick as a basis to quash the third-party subpoenas. *See* Opp'n at 2–4, 8, 20. Proposed Intervenors filed a reply in support of their motion. *See* Reply. The motions are now ripe for review.

## LEGAL STANDARDS

### I.    Motion to Intervene

Federal Rule of Civil Procedure 24(b) authorizes a third-party to intervene, upon timely motion, when the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention under Rule 24(b) "is discretionary by definition." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 125 n.36 (D.C. Cir. 1972). When "exercising its discretion, the court must consider whether

the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Fed. R. Civ. P. 24(b)(3).

## II.    Discovery Pursuant to 28 U.S.C. § 1782

Pursuant to 28 U.S.C. § 1782, a party may apply for a court order directing a third party

to "give testimony or statement or to produce a document or other thing for use in a proceeding

in a foreign or international tribunal."  28 U.S.C. § 1782.  This statute "provide[s] federal-court

assistance in the gathering of evidence for use in a foreign tribunal."  *Intel Corp. v. Advanced*

*Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  Before receiving relief, a petitioner must satisfy

four statutory conditions to establish that a court has the authority to grant the application: (1) the

target is found in the judicial district; (2) the discovery is meant for use before a foreign tribunal;

(3) the subpoena was requested by a foreign tribunal or an interested party; and (4) the

proceeding before the foreign tribunal must be either pending or "reasonably contemplated."[2]

*Intel*, 542 U.S. at 259.

Even if all four factors are satisfied, the court's authority under Section 1782 remains

discretionary.  "[S]imply because a court has the authority . . . to grant an application does not

mean that it is required to do so."  *In re Republic of Ecuador*, No. C-10-80255-CRB (EMC),

---

[2] These mandatory conditions for obtaining § 1782 assistance are sometimes conceptualized as a three-element test.  *See, e.g.*, *In re DiGiulian*, 314 F. Supp. 3d 1, 6 (D.D.C. 2018) (RMM); *Menashe v. Covington & Burling LLP*, --- F. Supp. 3d ----, No. 20-mc-46-ZMF, 2021 WL 3507637, at *3 (D.D.C. Aug. 3, 2021).  Whether articulated as three- or four-part, the threshold conditions are the same: The "reasonably contemplated" element, listed fourth here, is in the three-element formulations incorporated into element two, requiring the discovery to be "for use in" a "reasonably contemplated" foreign proceeding.  *Compare Matter of de Leon*, No. 19-mc-197-TSC, 2020 WL 1047742, at *2 (Mar. 4, 2020), *with DiGiulian*, 314 F. Supp. 3d at 6; *Menashe*, 2021 WL 3507637, at *3.  Because Judge Chutkan has already utilized the four-element construction in this matter, *see de Leon*, 2020 WL 1047742, at *2, the undersigned applies that approach here as well.

2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010) (citing *Intel*, 542 U.S. at 264). Courts may consider four factors, known as the *Intel* factors, when deciding whether to exercise their discretion to grant a Section 1782 application. *See Norex Petroleum, Ltd. v. Chubb Ins. Co. of Can.*, 384 F. Supp. 45, 49 (D.D.C. 2005) (citing *Intel*, 542 U.S. at 264–66); *In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 9 (D.D.C. 2017). The *Intel* factors are as follows: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

### III.    Motion to Quash

Federal Rule of Civil Procedure 45 governs the issuance and quashing of subpoenas. *See In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 8 (D.D.C. 2010). Courts must quash subpoenas if they would cause an undue burden on a person. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also Buzzfeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018) (quoting *Watts v. Sec. Exchange Comm.*, 482 F.3d 501, 508 (D.C. Cir. 2007)). When assessing the burden a subpoena imposes, "courts must also consider Rule 26, which provides, in relevant part, that parties may seek 'discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *Gouse v. District of Columbia*, 359 F. Supp. 3d 51, 56 (D.D.C. 2019) (quoting Fed. R. Civ. P. 26(b)(1)). Courts "balance the party's need for the discovery against the potential hardship to the subject of the subpoena" and "the requestor's need for, and relevance of, the information sought." *Eidos Display, LLC v.*

*Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 6 (D.D.C. 2013) (internal citations omitted); *Doe v. Provident Life & Accident Ins. Co.*, 247 F.R.D. 218, 221 (D.D.C. 2008). The party that moves to quash bears the burden of showing that "the documents requested are either unduly burdensome or privileged." *Micron Tech.*, 264 F.R.D. at 9 (citing *Alexander v. F.B.I.*, 192 F.R.D. 42, 46 (D.D.C. 2000)).

## DISCUSSION

### I.    Proposed Intervenors Satisfy the Rule 24(b) Standard for Permissive Intervention

Proposed Intervenors seek leave to intervene in this litigation so that they can move to vacate the March 4 Order authorizing Section 1782 discovery and quash the subpoenas issued to Northridge and CohnReznick. Their motion, which is unopposed on this issue, satisfies Rule 24(b)'s requirements. Proposed Intervenors' involvement in the Cayman proceedings regarding the valuation and distribution of Sheikh Osama's estate, and their interest in the information that the disputed subpoenas seek, establish "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Allowing intervention will neither lead to undue delay nor prejudice the adjudication of the original parties' rights. Ms. de Leon does not contend otherwise in her Opposition, and this Court may treat her failure to address the issue as a concession. *See Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) (collecting cases). Courts in the Southern District of Ohio and Northern District of California have also granted similar, unopposed motions for permissive intervention in Petitioner's concurrent Section 1782 lawsuits. *See* Mot. to Intervene at 16; Opp'n at 8–9; *de Leon v. The Clorox Co.*, Case No. 19-mc-80296-DMR, 2020 WL 4584204 (N.D. Cal. Aug. 10, 2020); *In re de Leon*, Case No. 1:19-mc-15, 2020 WL 419436 (S.D. Ohio Jan. 27, 2020) (noting that the parties entered an Agreed Order of Intervention). Accordingly, the Court will permit WAFR and Saturn to intervene in this action. WAFR and Saturn are hereafter referred to as "Intervenors."

## II.    Intervenors Have Standing to Move to Vacate the March 4th Order and Quash the Subpoenas Issued Pursuant to That Order

Although Ms. de Leon addressed her subpoenas to Respondents, WAFR and Saturn have moved to vacate the order granting the Section 1782 petition and quash the subpoenas issued pursuant to that ruling.  They contend that their alleged status as the subpoenas' "true targets" confers standing to make that request.  *See* Mot. to Intervene at 15–18.  Intervenors further assert they are interested parties who "are adverse to Ms. de Leon in the Cayman proceedings," and thus may properly oppose the Section 1782 petition.  *See id.* at 15–16.  Intervenors also cite confidentiality and privacy concerns as reasons to quash the third-party subpoenas, citing *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605 (D.D.C. 1969), and other relevant cases.  *See* Mot. to Intervene at 20–22.  Ms. de Leon acknowledges that the document and deposition subpoenas that she served on Northridge and CohnReznick "require production of objective, reliable documentary and testimonial evidence concerning the financial condition and organizational structure of the investment properties and assets owned by the Intervenors," Opp'n at 6, but contends that those interests do not allow Proposed Intervenors to raise objections based on "the burden of compliance for Northridge and CohnReznick."  *Id.* at 8.

A motion to quash a subpoena "should generally be made by the person from whom the documents or things are requested."  *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C. 2005) (citing 9A Wright & Miller, Fed. Prac. & Proc. § 2459 (2d ed. 1995)).  A person not explicitly targeted by the subpoena may have "standing to challenge a subpoena issued to a third party [if they have] a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter," *id.* at 21, or if a subpoena seeks their "private financial information."  *Khouj v. Darui*, 248 F.R.D. 729, 732 n.6 (D.D.C. 2008); *see also Shvartser v. Lekser*, No. 16-cv-1199,

2017 WL 8944907, at *2 (D.D.C. July 5, 2017) (concluding defendant had standing to move to quash third party subpoena because it had a personal interest in its private financial records).

Intervenors' claimed interest in the subpoenaed records is based on confidentiality and privacy concerns. Specifically, Intervenors assert that the subpoenas seek their financial and tax information. Ms. de Leon acknowledges that the subpoenas seek information about the "financial condition and organizational structure" of the Intervenors' properties and assets. Opp'n at 6. Thus, Intervenors have standing to move to quash the subpoenas insofar as the subpoenas seek their private financial information.

### III.    There Is No Basis to Vacate the March 4th Order Granting the § 1782 Petition.

Intervenors next contend that the Court's March 4th Order should be vacated because Ms. de Leon's application does not satisfy the statutory requirements of Section 1782 or, alternatively, because the discretionary *Intel* factors do not support granting the application. Specifically, they assert that Ms. de Leon cannot satisfy the statutory requirements that: (1) the person from whom discovery is sought is found in this district; and (2) that the requested discovery is "for use" in a proceeding before a foreign or international tribunal.[3] *See* Mot. to Intervene at 2, 17–19. Intervenors further argue that the *Intel* discretionary factors do not support issuing the subpoenas because (1) Intervenors are parties to the Cayman Island proceedings and are the true targets of the subpoenas, thus Ms. de Leon should request discovery through the Cayman Islands proceedings; (2) Ms. de Leon has not shown that the Grand Court of the Cayman Islands is receptive to this Court's assistance; (3) Ms. de Leon's subpoenas attempt to circumvent Cayman and U.S. procedural rules; (4) Ms. de Leon's subpoena requests are

---

[3] The remaining two factors are not at issue; Intervenors neither dispute that Petitioner is an "interested person" nor deny the existence of a pending foreign proceeding. Mot. to Intervene at 2, 17–19.

unduly burdensome and not proportional to the needs of this case; and (5) these subpoena requests are inefficient, and thus do not satisfy the twin aims of Section 1782.  *See* Mot. to Intervene at 22–33.  Those arguments do not present a sound basis for the Court to reconsider and vacate its prior ruling.

### A.    *The Court Had Authority to Grant the Application Under § 1782*

1.   The Parties from Whom Discovery Is Sought Reside or are Found in This District

Ms. de Leon's petition satisfies the first statutory requirement of Section 1782—that the party from whom discovery is sought must reside or be found within the district.  "[A] corporation is 'found' in a district where it is headquartered or incorporated."  *In re Application of Masters*, 315 F. Supp. 3d 269, 274 (D.D.C. 2018).  Further, "section 1782's 'resides or is found' language 'extends to the limits of personal jurisdiction consistent with due process.'"  Mem. Op. at 3 (citing *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019)).  Northridge is found within this district because its headquarters is at 1101 30th Street N.W., Washington, D.C., 20007.  *Id.* (citing Pet. ¶ 1).  CohnReznick's headquarters is in Bethesda, Maryland, but the Court is satisfied that its work for Northridge "renders it subject to specific personal jurisdiction" in this district.  Mem. Op. at 3.

Intervenors do not contest that Respondents are found in this district, but instead contend that their own residency should control the analysis because they are the true targets of Ms. de Leon's subpoenas.  *See* Mot. to Intervene at 17–18.  Intervenors note that the financial and organizational documents sought relate to "the non-resident WAFR Holdings and Saturn Property Investments," *see id.* at 18, and some discovery requests "actually see[k] information and documents concerning" Intervenors.  *Id.* at 10–11.

Intervenors rely on *Kestrel Coal Pty. Ltd. v. Joy Global Inc.*, 362 F.3d 401 (7th Cir. 2004), for the proposition that Section 1782 does not allow a party to obtain discovery from a domestic parent company found within a district if the true target of the request is a foreign subsidiary. *See* Mot. to Intervene at 17. But *Kestrel* is a case about document custody—that is, who controls the documents sought—not a case about identifying the "true target" of a discovery request where a document is controlled by one party but contains information about another. The plaintiff in *Kestrel*, an Australian mining corporation, sought documents from Joy Global, a "Delaware corporation with its principal place of business in Milwaukee," and three of Joy Global's indirect subsidiaries, which were Australian and U.K. firms. 362 F.3d at 402. The Section 1782 request was not Kestrel's first attempt to obtain the documents. *See id.* In the underlying Australian litigation, the presiding Justice had previously declined to order Joy Global's subsidiaries to produce the documents because they were "not necessary to the litigation." *Id.* Kestrel then sought the same documents from Joy Global in a Wisconsin federal district court via Section 1782 proceedings. *See id.* Kestrel requested that the court order that "Joy Global cause its subsidiaries to retrieve documents in Australia and the United Kingdom, have them shipped to Wisconsin, and there provide them to Kestrel, which [would] cart [the documents] to Australia to use in the Australian litigation." *Id.* at 402–03.

The district court initially granted Kestrel's Section 1782 application over Joy Global's protest, but the Seventh Circuit reversed. *Id.* at 403. The appeals panel recognized that Joy Global resided in Wisconsin, and that the records were sought for use in a foreign proceeding, thus satisfying two of Section 1782's requirements. *Id.* at 404. However, the Court noted that "the disclosure also must conform either to the procedure of the foreign nation or to that of the Federal Rules of Civil Procedure." *Id.* The parent-subsidiary relationship between Joy Global,

named in the subpoena, and Joy Global's subsidiaries, which maintained custody of the documents sought, raised questions about the discoverability of the records under the Federal Rules. *See id.* Namely, Joy Global did not possess or own the records, Kestrel had not demonstrated that Joy Global's corporate veil should be pierced so that Joy Global should be treated as a proxy for its foreign subsidiaries, and the records were not located in the United States. *Id.* at 404–05. The Federal Rules only permit discovery requests directed at "the person who *has*" the records or information sought. *Id.* at 404 (emphasis in original). In addition, although Joy Global might have conceivably possessed copies of some responsive documents in the United States, the Court declined to remand the issue for further exploration because the Australian Justice had already concluded that the documents were not necessary for the underlying litigation. *Id.* at 406. Therefore, "no purpose would be served by their production in the United States under § 1782." *Id.*

As this illustration demonstrates, Intervenors' reliance on *Kestrel* is misplaced. *Kestrel* does *not* hold that a Court should base its analysis of whether a company is "found in" the relevant district on whether the company is the "true target" of the subpoena. The Seventh Circuit found it uncontroversial that Joy Global resided in Wisconsin and was therefore "found" in the Eastern District of Wisconsin. *Id.* at 404. The *Kestrel* court was more concerned that the proposed discovery request did not comply with the Federal Rules of Civil Procedure because it sought documents from a party that did not possess them. *See id.* at 405 ("One uses [the Federal Rules] to get documents from firms that possess them, not from their corporate affiliates."); *id.* at 404 ("To obtain documents under Rule 26 and the other discovery rules, you seek them from the person who *has* them, rather than from an investor in such a person.") (emphasis in original). Here, in contrast, Ms. de Leon's subpoena seeks documents from Respondents that Respondents

have in their possession. *See* Opp'n at 9–10. Ms. de Leon does not request that Northridge and

CohnReznick obtain any additional records directly from the Intervenors. *See* Opp'n at 14–15

(noting that, "[i]f [Northridge and CohnReznick] have the evidence described in the subpoenas

that happens also to be possessed by WAFR, they of course must produce it, but they have no

obligation to go out and seek the requested evidence from WAFR or Saturn in order to comply

with the subpoenas."). Even if Ms. de Leon is only interested in Respondents' documents

because they concern Intervenors, the fact that Respondents apparently possess the records

sought makes this case fundamentally distinct from *Kestrel*.

    Having distinguished *Kestrel*, the Court finds no other reason to look beyond the identity

of the respondent to identify the "true target" of the proposed discovery. In sum, Intervenors'

arguments provide no basis to disturb the Court's prior conclusion that Respondents are found or

reside in the district for § 1782 purposes.[4] Thus, the first statutory requirement is satisfied.

        2.    <u>The Proposed Discovery Is "For Use" in a Foreign Tribunal</u>

    The second statutory element requires the discovery to be "for use in a proceeding in a

foreign or international tribunal." 28 U.S.C. § 1782(a). "Section 1782's 'for use' requirement is

not an exacting one." *In re Application for an Ord. of Hulley Enters. Ltd. v. Baker Botts LLP*

*("In re an Ord. of Hulley")*, No. 17-mc-1466, 2017 WL 3708028, at *4 (D.D.C. Aug. 18, 2017).

---

[4] Intervenors cite three additional cases in favor of their residency requirement, but these cases also do not relate to the "true target" argument. Each case discusses whether a foreign company, which was the *explicit* target of discovery, was found in the relevant judicial district despite being incorporated or headquartered elsewhere. *See In re Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-mc-20378, 2011 WL 181311, at *7–*8 (S.D. Fla. Jan. 19, 2011); *In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates or Fortress Inv. Grp. LLC*, No. 14-cv-1801, 2014 WL 3404955, at *5 (S.D.N.Y. July 9, 2014); *In re Application Pursuant to 28 U.S.C. § 1782 for Discovery from Slawomir Kaczor & Tomasz Rogucki*, No. 1:14-mc-44, 2014 WL 4181618, at *2 (S.D. Ohio Aug. 21, 2014). Here, Respondents—the targets of Ms. de Leon's subpoena—are not foreign companies and reside within the district.

Intervenors nevertheless contend that Ms. de Leon has failed to meet this requirement for two reasons. First, they contend that Ms. de Leon has requested documents and information relevant to a stayed case in the Central District of California, not to a foreign proceeding as envisioned by Section 1782. *See* Mot. to Intervene at 18–19; Reply at 6–8. Second, they contend that Ms. de Leon cannot "introduce th[e] information [requested in the subpoenas] as evidence" in the Cayman proceedings. *Id.* at 19 (quoting *In re Sargent*, 278 F. Supp. 3d 814, 822 (S.D.N.Y. 2017)). Specifically, Intervenors assert that Ms. de Leon cannot introduce "much of the discovery [she] seeks [because it] relates to *personal data* belonging to shareholders, beneficial owners, officers, and directors of the Cayman entities" and this type of information is "typically protected by the Cayman's Data Protection Law (2017) Revision (the 'DPL') . . . absent an exemption." Mot. to Intervene at 21–22 (emphasis added). Ms. de Leon disagrees with both arguments. *See* Opp'n at 14–16, 19–20.

The subpoenas seek documents that are relevant to and "for use in" the Cayman Islands proceedings. The Cayman Islands Court is adjudicating the value and distribution of assets that belonged to Ms. de Leon's late husband, and the subpoenas request documents related to his estate's valuation. As Ms. de Leon notes, the subpoenas provide "objective financial and corporate information needed for the Cayman Administrator and Cayman court to fairly and equitably administer Sheikh Osama's estate in the Cayman court." Opp'n at 11. Although there is an overlap of issues and evidence in the Central District of California and Cayman Islands cases, that does not render the requested information irrelevant to the Cayman Island proceedings. *See id.* at 15. Further, at the time of filing, the California case was stayed, thus there was no indication that Ms. de Leon intended to use the discovery sought here in that action. And, as Ms. de Leon states, "once the stay in the Central District Case is lifted, [she] as plaintiff

in that case can exercise her discovery rights under Fed. R. Civ. P. 45 and serve subpoenas on Northridge and CohnReznick US as a matter of course." *Id.*

Regarding the second argument, the financial information Ms. de Leon seeks also appears to be admissible in the Cayman Islands proceedings. Intervenors incorrectly assert that Ms. de Leon fails to explain exactly how or when she plans to produce materials to the Grand Court. Ms. de Leon states in her briefing that this information would assist the Cayman Court value Sheikh Osama's assets. *See id.* at 11. The fact that she has not said exactly *when* she will introduce the information does not defeat her argument. Thus, Ms. de Leon has made "the requisite *de minimis* showing that [she] may use the requested discovery in the [Cayman Islands valuation proceedings]." *In re an Ord. of Hulley*, 2017 WL 3708028, at *4.

Further, this Court need not decide whether Ms. de Leon will be precluded from introducing the discovered documents in the Cayman Islands proceedings in the event the documents include "personal data" under Cayman law. Both parties briefed the admissibility of documents that may be protected under the DPL and submitted affidavits in support of their arguments. But this Court need only satisfy itself that the information requested has some relevance to the foreign proceedings. *See In re Veiga*, 746 F. Supp. 2d 8, 24 (D.D.C. 2010) ("Where the relevance or admissibility of the evidence sought is sharply disputed, courts are free to rely on the statute's overarching interest in providing fair and efficient assistance and the liberal standards of discovery in granting the application and deferring to the foreign tribunal on contested issues."). The information is relevant to the Cayman proceedings, as discussed above. Thus, because the requested information is "for use" in the Cayman Islands litigation, and the potential inadmissibility of the information is an issue for the Cayman court to resolve, the second statutory requirement is satisfied.

14

As Intervenors do not challenge the third or fourth statutory requirements, and the first two elements are met, there is no basis to vacate or reconsider the Court's prior determination that Ms. de Leon has satisfied the statutory requirements under 28 U.S. § 1782.

**B.      The Intel Factors Support the Court's Decision to Grant the § 1782 Application**

Because the four statutory requirements are met, this Court has "considerable discretion" to grant a Section 1782 application. *In re Application for an Order Pursuant to 28 U.S.C. 1782*, 473 F. App'x 2, 3–4 (D.C. Cir. 2012) (citing *Intel*, 542 U.S. at 264). Courts typically use the *Intel* factors to guide that analysis. *See Norex Petroleum Ltd. v. Chubb Ins. Co. of Can.*, 384 F. Supp. 45, 49 (D.D.C. 2005) (citing *Intel*, 542 U.S. at 264–66). Although the Intervenors principally argue that it is unnecessary to consider the *Intel* factors because the statutory requirements are not satisfied, they alternatively argue that none of the four *Intel* factors favors discovery here. *See* Mot. to Intervene at 22–33.

**1.      Whether the Party Is a Participant in the Foreign Proceeding**

The first *Intel* factor is whether the "person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. This factor juxtaposes the relative ease of a foreign tribunal's ability to order production of evidence from those appearing before it with the difficulty of reaching those outside its jurisdiction, since "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id*. If evidence is sought from a non-party to the underlying foreign proceeding, it "may be unobtainable absent § 1782(a) aid." *Id*. Thus, this factor favors allowing discovery from entities that are not parties to the foreign proceeding.

In the Memorandum Opinion, Judge Chutkan found that the first *Intel* factor weighs in Ms. de Leon's favor because the subpoenas seek documents from Respondents Northridge and

CohnReznick, who are non-parties to the Cayman Islands litigation and thus cannot be compelled to provide discovery by that court. *See* Mem. Op. at 4–5. Intervenors, citing *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79 (2d Cir. 2004), assert that their own status as parties to the Cayman litigation should control the analysis of this factor because they are the true targets of Ms. de Leon's subpoenas, despite the fact that the subpoenas are technically addressed to Respondents. *See* Mot. to Intervene at 23–25. Intervenors base their "true target" argument on the fact that some of the requests seek organizational and financial documents and communications from entities for which WAFR Holdings is the parent company. *See id.* at 24–25.

The Court declines to adopt Intervenors' "true target" theory. Intervenors correctly note that the *Schmitz* court looked beyond the identity of the respondent to a subpoena proposed under Section 1782—a law firm—and considered that "for all intents and purposes" the discovery sought records from the firm's client, a participant in the underlying foreign litigation. *See Schmitz*, 376 F.3d at 81–82. The Second Circuit concluded that, under *Intel*, "because [the client] is a participant in the German litigation subject to German court jurisdiction, petitioners' need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" *Id.* at 85 (quoting *Intel*, 542 U.S. at 264). That holding does not bind this Court, and the undersigned respectfully disagrees with the Second Circuit's analysis. Nothing in *Intel* or Section 1782 suggests that courts should disregard the identity of the named target of a subpoena simply because the records requested from the target include information derived from the target's professional relationship with a party to the foreign litigation. Although it is undisputed that Intervenors' records are among the documents that Respondents have been asked to produce, Respondents are the targets of the subpoenas,

Respondents have custody of the records, Respondents are not parties to the foreign litigation, and Respondents can be compelled to produce discovery under § 1782. Therefore, this factor favors granting Section 1782 discovery subpoenas.

2.    Whether the Foreign Tribunal Is Receptive to Assistance

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. If the foreign court is receptive to receiving the evidence obtained through the § 1782 discovery order, this factor favors granting the petition. The Grand Court of the Cayman Islands has not requested the information Ms. de Leon seeks, and Ms. de Leon and the Intervenors dispute whether that court would review and be receptive to the proposed discovery.

Ms. de Leon has demonstrated that the Cayman Administrator has expressed interest in the documents requested and believes that the Grand Court of the Cayman Islands will "receive, accept, and consider the documents and information obtained" in this proceeding. Decl. of David James Lee ("First Lee Decl.") ¶¶ 15, 16, ECF No. 1-8; *see also* Second Decl. of David James Lee ("Second Lee Decl.") ¶ 8, ECF No. 27-1. The Intervenors assert that Ms. de Leon has not adequately shown that the Cayman Island Administrator or the Grand Court are receptive to this Court's assistance. *See* Mot. to Intervene at 25–28; Reply at 12–14. The fact that neither the Court nor the Administrator has affirmatively requested the discovery is not dispositive because § 1782 discovery is not conditioned on "an overt expression from the foreign court that it wants or needs the information." *Mees v. Buiter*, 793 F.3d 291, 303–04 (2d Cir. 2015) (noting § 1782 authorizes discovery not only when a foreign tribunal, but also when an interested person, requests the information). Additionally, the distinction Intervenors attempt to draw between the

Grand Court of the Cayman Islands and the case Administrator is of little significance.  The

Administrator has been appointed by the Grand Court as its agent "for the purpose of

administering the Cayman Estate and determining the fair value of the assets held by the Cayman

Estate of Sheikh Osama for the Cayman Islands court."  Pet. at 6.  The Administrator is a court

officer and has expressed interest in at least some of the documents requested by Petitioner's

application.  *See* Second Lee Decl. ¶ 8.  That expression of interest is sufficient to demonstrate

that the foreign tribunal would be receptive to the discovery, and thus the second factor favors

granting Ms. de Leon's application for § 1782 discovery.

### 3.    Whether the Request is an Attempt to Circumvent Procedural Restrictions

The third *Intel* factor analyzes whether Petitioner's § 1782 application is designed to

"circumvent foreign proof-gathering restrictions or other policies of a foreign country or the

United States."  *Intel*, 542 U.S. at 265 (citation omitted).  Because § 1782 discovery is designed

to provide federal-court assistance to foreign courts by producing evidence not otherwise

obtainable by the foreign court, "the availability of the discovery in the foreign proceeding

should not be afforded undue weight."  *Mees*, 793 F.3d at 303.

Intervenors point to the fact that Ms. de Leon has not sought the documents she seeks

here in the underlying foreign litigation as evidence that Petitioner is circumventing restrictions

there.  *See* Mot. to Intervene at 28–30; Reply at 14–15.  Intervenors acknowledge that "Section

1782 applicants need not exhaust every possible attempt at obtaining discovery in the foreign

tribunal before making an application under Section 1782," but assert that "failure to try

evidences an attempt to circumvent the foreign jurisdiction's discovery rules."  Mot. to Intervene

at 28 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. c-07-5944-sc, 2013 WL 183944,

at *3 (N.D. Cal. Jan. 17, 2013), and *In re Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 107–08 (D.D.C. 2010)).[5]

As Intervenors acknowledge, "[c]ourts have refused to engraft a quasi-exhaustion requirement onto section 1782 that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." *In re Caratube*, 730 F. Supp. 2d at 107; *see also HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 225 (D.D.C. 2015), *adopted in relevant part*, 2015 WL 13759884 (D.D.C. Nov. 13, 2015) (holding same). Accordingly, Ms. de Leon was not required to seek documents from Respondents, who are not parties to the Cayman Islands litigation, in the underlying proceedings before seeking discovery here. Further, the fact that the foreign court appears receptive to this evidence rebuts Intervenors' argument. *See* First Lee Decl. ¶¶ 15, 16; *see also In re Accent Delight Int'l Ltd.*, 696 F. App'x 537, 539 (2d Cir. 2017) (affirming district court's reasoning that the third *Intel* factor favors Section 1782 discovery if the foreign court expresses interest in receiving the information). Accordingly, this factor also favors granting Ms. de Leon's petition.

### 4. Whether the Request Is Unduly Intrusive or Burdensome

The fourth and final *Intel* factor allows a court to consider whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. In making that assessment, a court

---

[5] In both of these cases, the petitioners purposefully did not seek specific discovery in the underlying litigation and filed Section 1782 applications to obtain that information from those same defendants. *See In re Cathode Ray Tube*, 730 F. Supp. 2d at 1, 3 (finding that, because the petitioner sought discovery via Section 1782 application without first seeking discovery from the same defendants in Korea because of an unfavorable Korean discovery rule, the Section 1782 application was an attempt to circumvent Korea's procedural restrictions); *In re Caratube*, 730 F. Supp. 2d at 108 (finding that, when the petitioner was faced with a discovery dispute during their international arbitration proceedings and filed a Section 1782 application two days later, "Caratube appear[ed] to be circumventing the Tribunal's control over its own discovery process.").

should apply "the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*,

793 F.3d at 302 ("Limits may be proscribed on [§ 1782] discovery or an existing order may be

quashed under Rule 26(c).") (internal citations omitted).  Rule 26(b)(1) allows parties to "obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  If a discovery request appears

overbroad, the court should consider whether that defect can be cured by imposing limitations on

discovery instead of simply denying the petition outright. *See Mees*, 793 F.3d at 302 (citing

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d at 1095, 1101 (2d Cir. 1995)).

The parties dispute whether Intervenors can bring a burdensomeness challenge on behalf

of Respondents, who must respond to the requests, and whether the requests are substantively

overbroad or proportional to the needs of the underlying litigation.  But the Court need not

resolve those disputes, because for purposes of the present analysis under the *Intel* factors, this

final factor would not outweigh the first, second, or third *Intel* factors, all of which weigh in

favor of granting Ms. de Leon's petition.  Moreover, even if Ms. de Leon's discovery requests

cast too wide a net, vacating the Court's previous order, and thus disallowing all discovery,

would be an unduly extreme remedy.  "[I]t is far preferable for a district court to reconcile

whatever misgivings it may have about the impact of its participation in the foreign litigation by

issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*,

793 F.3d at 302 (citing *Euromepa*, 51 F.3d at 1101); *see also In re Application of Malev*

*Hungarian Airlines*, 964 F.2d 97, 102 (2d Cir. 1992) (noting that Section 1782 and Rule 26 give

a district court broad discretion to impose reasonable limitations upon discovery).  The Court

will have occasion to evaluate whether the subpoenas impose financial and logistical burdens

upon Respondents that are disproportional to the needs of the case when it resolves the pending

Motion to Quash filed by Northridge. [6]   Intervenors' arguments also will be considered in that

context.

### 5.    Whether the Request Furthers the "Twin Aims" of Section 1782

Intervenors' final theory in favor of quashing Ms. de Leon's subpoena rests on the "twin

aims" of Section 1782.  The statute's "twin aims" are "providing efficient assistance to

participants in international litigation and encouraging foreign countries by example to provide

similar assistance to our courts."  *Intel*, 542 U.S. at 252 (citing *Advanced Micro Devices v. Intel

Corp.*, 292 F.3d 664, 669 (9th Cir. 2002)).  Intervenors assert that Ms. de Leon's decision to take

advantage of the Section 1782 process, instead of seeking some of the requested material in the

Cayman Islands proceeding, "is inefficient on its face."  Mot. to Intervene at 32.  Further, they

state that "the relevant documents and information Ms. de Leon seeks have already largely been

provided in the Cayman proceedings." Reply at 18.  Ms. de Leon does not address Intervenors'

twin aims argument in her opposition brief.

The twin aims are, similar to the *Intel* factors, discretionary.  Even if discovery related to

the Intervenors may have been more efficient if sought in the Cayman Islands proceedings,

Congress has given Ms. de Leon the right to seek these documents via Section 1782 proceedings.

---

[6] The discovery requests are very broad in timeframe and scope.  The Court recognized in
its Memorandum Opinion that "compliance [with Ms. de Leon's subpoena] may be costly and
complex," but found the proposed discovery was neither unduly burdensome nor intrusive
because "the requests are tailored to issues that, at this stage, appear relevant to the Cayman
proceedings."  Mem. Op. at 5.  Intervenors have presented arguments that were not before the
Court when the *ex parte* petition was filed, and their characterization of the scope of the
discovery suggests that it may burden Respondents to a degree that exceeds what is reasonable
and proportional.  The discovery propounded on Northridge includes 73 document request
categories and 31 deposition topics.  *See* ECF Nos. 1-2, 1-3. The discovery propounded on
CohnReznick includes 66 document request categories and 30 deposition topics.  *See* ECF Nos.
1-4, 1-5.  Northridge separately moved to quash the subpoenas as to them as unduly burdensome
on the same day that Proposed Intervenors filed the instant motion.  *See* Northridge Mot. to
Quash, ECF No. 13.

And this discovery seems designed to provide Ms. de Leon with a more nuanced understanding of Sheikh Osama's assets and thus facilitates the development of a significant issue in the foreign litigation.

In sum, after weighing the *Intel* factors, considering the twin aims, and the Section 1782 statutory requirements, the Court denies Proposed Intervenors' motion to vacate the March 4th Order that permitted Ms. de Leon to issue subpoenas to Respondents.

IV.    **Proposed Intervenors Have Not Demonstrated That the Subpoenas Should Be Quashed.**

Finally, Intervenors ask the Court to consider their privacy interests in financial information, and the sensitivity and confidentiality of that information, when deciding whether to quash the subpoenas permitted by the March 4th Order. *See* Reply at 8–10. A third party may move to quash a subpoena on the basis that it "subjects [the] person to undue burden" or "requires disclosure of privileged or other matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3); *see also In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 83 (D.D.C. 2010). Because a "propriety interest" or "personal interest in the subpoenaed matter" can be sufficient to confer standing to challenge a subpoena, *see Thurgood Marshall Acad.*, 230 F.R.D. at 21, the Intervenors' privacy and confidentiality interests are a valid consideration in weighing the burdens imposed by the subpoena. But to the extent that Ms. de Leon seeks records that should be protected under Cayman law, narrowing the scope of her specific discovery requests or requiring the parties to adhere to a protective order is a more appropriate remedy than quashing the subpoena altogether. Indeed, Ms. de Leon acknowledges that some of the information sought is confidential and a protective order may be appropriate, *see* Opp'n at 11, and included a proposed protective order with her Petition. *See* Proposed Protective Order, ECF No. 1-6.

The Intervenors' proposal to quash the subpoena and Ms. de Leon's suggestion of entering a protective order are both more properly considered in conjunction with Northridge's pending Motion to Quash. Alternatively, Intervenors may move for a protective order after conferring with Ms. de Leon if they feel their attempts to narrow or resolve their dispute will not adequately protect their interests. *See Thurgood Marshall Acad.*, 230 F.R.D. at 22 (discussing third party's concern with the scope of a subpoena in the context of a protective order).

Proposed Intervenors' remaining arguments for quashing the subpoena arise under Section 1782 and were discussed above. *See* Part III. As there are no grounds to vacate the order granting the Section 1782 petition, there similarly are no grounds to quash the subpoenas. As noted above, the Court will consider whether to narrow the scope of the subpoenas when it resolves the pending motion filed by Northridge.

**CONCLUSION AND ORDER**

For the above reasons, it is hereby ORDERED that Proposed Intervenors' Motion to Intervene is **GRANTED**, their motion to vacate the March 4, 2020 Order authorizing discovery is **DENIED**, and their motion to quash is **DENIED WITHOUT PREJUDICE**.

**REVIEW BY THE DISTRICT COURT**

The parties are hereby advised that under the provisions of Local Rule 72.2(b) of the United States District Court for the District of Columbia, any party who objects to the undersigned magistrate judge's ruling must file a written objection thereto within 14 days of the party's receipt of this Memorandum Opinion and Order. The written objections must specifically designate the order or part thereof to which objection is made, and the basis for the objection.

Date: March 12, 2022

_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE